Mr. Don B. McNamara Board of Education Menomonee Falls School District N90 W17609 St. Steven's Drive Menomonee Falls, Wisconsin 53051
Dear Mr. McNamara:
You have asked for my opinion on whether section 19.85(3) of the Wisconsin statutes requires a governmental body to conduct discussions and deliberations regarding the final ratification of a collective bargaining agreement in open session. Your question came up during a meeting of the Menomonee Falls Board of Education ("Board"). You report that towards the end of 1993, the Board had been negotiating changes in three collective bargaining agreements. The public notice for the Board's December 13, 1993, meeting stated that it would convene in closed session under section 19.85(1)(e) "for discussion of negotiations." You further report that when the members of the Board arrived at the meeting, they were told that tentative agreements had been reached with the three bargaining units and that all three units had ratified their agreements. The Board convened in closed session under section 19.85(1)(e) to discuss the events leading up to the bargaining units ratifying their agreements. The Board then reconvened in open session and voted to ratify the agreements, without conducting any discussion in open session.
You ask whether section 19.85(3) required that the Board conduct its December 13, 1993, discussions leading up to final ratification of the agreements in open rather than closed session. In my opinion, the answer is yes.
The open meetings law provides that a governmental body must meet in open session unless one of the exemptions in section19.85(1) permits a closed session. See. 19.83, Stats. The *Page 140 
definition of "governmental body" in section 19.82(1) excludes a body "formed for or meeting for the purpose of collective bargaining" under chapter 111. Arguably, meetings to discuss collective bargaining strategies fit within that exclusion and thus are not subject to the open meetings law. My predecessor has, however, advised that when a body is meeting to discuss collective bargaining as well as other business, the body should notice all subjects of the meeting in accordance with section19.84. 66 Op. Att'y Gen. 93, 96-97 (1977). Accordingly, in this case, the Board gave notice that it would convene in closed session under section 19.85(1)(e) for "discussion of negotiations." Section 19.85(1)(e) permits a closed session for the purpose of "[d]eliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session." The breadth of that exemption, as well as the exclusion in section 19.82(1), is limited by section 19.85(3) which provides: "Nothing in this subchapter shall be construed to authorize a governmental body to consider at a meeting in closed session the final ratification or approval of a collective bargaining agreement under subch. IV or V of ch. 111 which has been negotiated by such body or on its behalf."
I interpret section 19.85(1)(e) to permit a governmental body to convene in closed session to formulate strategy while engaged in negotiations with a collective bargaining unit. I interpret section 19.85(3) to require that once a governmental body has reached a tentative agreement with a collective bargaining unit, the body must conduct its deliberations leading up to ratification of the agreement in open session.
Section 19.85(1)(e) only permits a closed session when "competitive or bargaining" reasons require closure. The obvious purpose of section 19.85(1)(e) is to permit a governmental body to meet in closed session where to do otherwise would compromise the governmental body's bargaining position by revealing its negotiating strategy. The exemption has therefore *Page 141 
been interpreted to authorize a governmental body to convene in closed session to formulate negotiating strategy while engaged in collective bargaining. 66 Op. Att'y Gen. at 96-97. Once a governmental body and bargaining unit have reached a tentative agreement, however, bargaining ceases. The question before the governmental body is no longer what strategy the body should adopt in order to obtain an agreement with favorable terms. The question is whether it is in the public's interest to ratify the terms as tentatively agreed to by the parties. Given that the governmental body is not actually engaged in negotiations at that point, it does not appear that "competitive or bargaining reasons" as that phrase is used in section 19.85(1)(e) exist to warrant discussing the agreement in closed session.
Moreover, the limitation in section 19.85(3) against considering the final ratification of a collective bargaining agreement in closed session is absolute in its terms. That section provides that "nothing" in the open meetings law shall be construed to permit a closed session to consider final ratification of an agreement. If the language of a statute is unambiguous, the court must give the words of the statute their obvious and ordinary meaning, without resorting to legislative history or canons of construction. Dept. of Transp. v. Transp.Comm., 111 Wis.2d 80, 87-88, 330 N.W.2d 159 (1983). The language of section 19.85(3) is not ambiguous. By its plain terms, section19.85(3) prohibits a governmental body from considering final ratification of a collective bargaining agreement in closed session, regardless of the provisions in sections 19.82(1) and19.85(1)(e). Section 19.85(3) thereby unambiguously prohibits a body from considering final ratification in closed session, even if there are competitive or bargaining reasons for doing so.
In this case, the Board learned at its December 13, 1993, meeting that its bargaining team had reached tentative agreements with the bargaining units. After learning that, the Board convened in closed session to discuss the agreements and then reconvened in open session to vote on final ratification of them. The Board *Page 142 
apparently interpreted section 19.85(3) to require only that the Board conduct its vote on final ratification of the agreements in open session.
That is too narrow a reading of section 19.85(3), which states that nothing in the open meetings law shall be construed to authorize a governmental body to "consider" final ratification of a collective bargaining agreement in closed session. A commonly accepted definition of "consider" is "1: to reflect on: think about with a degree of care or caution . . . 8: to give thought to with a view to purchasing, accepting, or adopting . . . 2: REFLECT, DELIBERATE, PONDER . . . ." Webster's Third New International Dictionary 483 (1986). The plain language of section 19.85(3) thereby requires that the deliberations as well as the final vote on ratification of a collective bargaining agreement be conducted in open session. To the extent my predecessor's opinion in 66 Op. Att'y Gen. 94 suggests otherwise, I must disagree.
Based on the plain language of section 19.85(3), I conclude that once a governmental body has entered into a tentative agreement with a bargaining unit, the governmental body must conduct its vote, as well as its deliberations leading up to the vote on final ratification of the agreement in open session. At that point, a governmental body can no longer rely on the competitive or bargaining reasons exemption in section19.85(1)(e) to discuss the agreement in closed session.
My predecessor reached the same conclusion when interpreting the exemption under the state's old Anti-Secrecy Law that permitted a closed session for "conducting . . . public business which for competitive or bargaining reasons require closed sessions." Sec. 14.90(3)(d), Stats. (1965). In 54 Op. Att'y Gen. Introduction (1965), my predecessor applied that provision to wage negotiations between a school board and its teachers and concluded that:
 "Whether the teacher salary proposals submitted by the teachers' committee and the counter proposals made by the *Page 143 
school board are preliminary in nature and for bargaining reasons need to be discussed in a closed session is basically a question of fact to be decided by the school board. If the board finds that the bargaining process can best be carried on in private, the meeting may be closed. If the board finds no necessity for bargaining in private, the meeting should be open to the public. In any event, when the bargaining period is past, no final action should be taken on the teachers' salary schedule until they are made public and discussed in an open public meeting."
Id. at vi (emphasis added). The Supreme Court cited that opinion with approval stating that:
 An attorney general's opinion (54 Op. Atty. Gen. (1965), Introduction, vi) found one of the exceptions sufficiently broad to cover the negotiations between a municipality and a labor organization. However, it is clear that the formal introduction, deliberation and adoption by the elected body of the bargaining recommendations must be at open meetings.
. . . .
 The open meeting is the necessary and final step in the "negotiation" process between the school board and the majority teachers' union.
 The proposed agreement submitted by the school board's bargaining committee does not have to be accepted by the school board. If the recommendations of the committee automatically were approved by the school board, then the anti-secrecy law has been violated and the open meeting is nothing but a sham.
Board of Sch. Directors of Milwaukee v. WERC, 42 Wis.2d 637,653, 168 N.W.2d 92 (1969) (emphasis added).
The purpose of the open meetings law is to provide the public with the fullest and most complete information regarding governmental affairs as is compatible with the conduct of *Page 144 
governmental business. The Legislature explicitly provided that the provisions of the law must be liberally construed to promote that purpose. Sec. 19.81(4), Stats. Interpreting the law to require a governmental body to conduct its discussions and deliberations leading up to its vote on final ratification of a collective bargaining agreement in open session helps insure that the public not only has information about how the members of their local governing board voted but also the reasons they gave for doing so. That information is essential to enable citizens to make informed decisions about their elected officials.
For all of these reasons, I conclude that the open meetings law requires that once a governmental body has reached a tentative agreement with a bargaining unit, the body must conduct its vote, as well as its discussions and deliberations leading up to the vote on final ratification of the agreement in open session. Based on the facts that you have given, it appears that the Board should have conducted its December 13, 1993, discussions and deliberations regarding the three tentative agreements in open session.
Sincerely,
 James E. Doyle Attorney General
JED:MWS:dah *Page 145